**Patrick Joseph McMURROUGH,
Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–98–101–CR.**

Court of Appeals of Texas,
Fort Worth.

July 1, 1999.

Law Office of William H. "Bill" Ray, P.C., William H. "Bill" Ray, Fort Worth, for Appellant.

Bruce Isaacks, Denton County District Attorney, Pamela J. Moore, Doug Wilder, Bebra Bender, Ass't District Attorneys, Denton, for Appellee.

PANEL B: DAUPHINOT, BRIGHAM, and HOLMAN, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

Appellant Patrick Joseph McMurrough appeals his conviction for the offense of unlawfully carrying a weapon. We are asked to determine: (1) whether the evidence was legally sufficient; (2) whether the trial court erred in restricting Appellant's final argument in that regard; and (3) whether the State made impermissible comments during final argument at the guilt-innocence stage of the trial. For the reasons that follow, we reverse.

## I. BACKGROUND

Officer James Johnson observed Appellant driving with an expired license plate sticker. Johnson made a traffic stop, obtained Appellant's driver's license, told Appellant to remain seated, and returned to his patrol car to write the citation. Appellant got out of his car, and Johnson saw a knife on Appellant's belt. Johnson approached him, and asked if Appellant had any more weapons in his car. Appellant responded that there was a knife in the driver's side door pocket. Johnson inquired why Appellant had the knife, and Appellant responded that he goes to the north side frequently and keeps it for protection in case any "n———s" jump him. Johnson measured the knife and determined it to be one-sixteenth of an inch shy of six inches. Johnson arrested Appellant and transported him to the Denton County jail.

Appellant was charged by information with the offense of unlawfully carrying a weapon. At trial, Appellant testified that on the day he was stopped, he was on his way from Trophy Club to Fort Worth and planned to attend class, then drive to Rio Vista to stay overnight with a friend. He bought the knife at Trader's Village and had not determined how he was going to use it. He denied that he told Johnson that he used it for protection.

At the conclusion of evidence, Appellant asked the trial court to take judicial notice that the sharpened portion of the blade was less than five and one-half inches in length. The court did so, and also noted for the record that it measured over five and one-half inches in length from the base of the blade to the tip. Appellant requested a directed verdict on the ground that the knife was not illegal; the trial court denied the request. The State moved for an instruction that Appellant refrain from arguing in closing argument that the proper measurement under the law is from the

sharpened portion of the blade to the tip. The trial court disallowed such argument.

The jury returned a verdict of guilty, and the trial court assessed punishment at 100 days in jail and a fine of $500, then suspended the jail sentence and placed Appellant on community supervision for one year. Appellant timely filed his notice of appeal.

## II. LEGAL SUFFICIENCY OF THE EVIDENCE

In his first point, Appellant contends the evidence was legally insufficient to support his conviction. Specifically, Appellant argues that the knife was not illegal because the sharpened part of the blade measured under five and one-half inches in length.

In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *See Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* — U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim. App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the factfinder. *See Williams v. State,* 937 S.W.2d 479, 483 (Tex.Crim.App.1996). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson,* 819 S.W.2d at 846.

### A. Meaning of "Blade"

In addressing point one, we must construe the word "blade" in order to determine whether the evidence was legally sufficient to support Appellant's conviction for unlawfully carrying an illegal knife.

Section 46.02 prohibits a person from carrying an illegal knife. *See* TEX. PENAL CODE ANN. § 46.02(a) (Vernon Supp.1999). An "illegal knife" is defined as a "knife with a blade over five and one-half inches." *Id.* § 46.01(6)(A) (Vernon 1994). A "knife" is defined as "any bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing a person with the instrument." *Id.* § 46.01(7). The word "blade" is not defined in the penal code.

Appellant contends that "blade" includes only the sharp, cutting portion of the instrument. We disagree. The provisions of the penal code are to be construed according to the fair import of their terms. *See* TEX. PENAL CODE ANN. § 1.05(a) (Vernon 1994). When words in a statute are not defined, they are ordinarily given their plain meaning, unless the statute clearly shows the words were used in some other sense. *See Daniels v. State,* 754 S.W.2d 214, 219 (Tex.Crim.App.1988).

"Blade" is defined as "[t]he flat-edged cutting part of a sharpened tool or weapon." THE AMERICAN HERITAGE DICTIONARY 185 (2d ed.1985). The common meaning merely distinguishes the *cutting part* of a knife from the *handle. See Rainer v. State,* 763 S.W.2d 615, 616 (Tex.App.— Eastland 1989, pet. ref'd). Therefore, a "blade," as used in section 46.01(6)(A), is the flat-edged part of the knife, which includes the sharpened part of the instrument and any remaining flat-edged part up to, but not including, the handle.

The knife introduced into evidence had a blade that measured over five and one-half inches in length. Viewing the evidence in a light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We overrule point one.

### III. Improper Jury Argument

■ Appellant complains that the prosecutor interjected impermissible comments that were outside the record when he made the following argument in the guilt-innocence stage of the trial:

The first time he's going to go to his friend's house under those working conditions was when he got stopped with his knife, and he told the officer he used it for protection. Why do you carry a knife? For protection. *When did the defense of traveling arise? After he hired his lawyer.* [Emphasis added.]

At this point, defense counsel objected that the prosecutor's comments were outside the record. The trial court sustained the objection and, upon defense counsel's request, instructed the jury that the only evidence comes from the witness stand and that argument of counsel is not evidence. Defense counsel responded: "I also request that I don't think there's any way an instruction can cure that statement of the prosecutor, and I would ask that the [c]ourt declare a mistrial." This request was denied.

■ The purpose of closing argument is to facilitate the jury's proper analysis of the evidence so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *See Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980); *Faulkner v. State,* 940 S.W.2d 308, 311 (Tex.App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of op-posing counsel; or (4) plea for law enforcement. *See Felder v. State,* 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973).

■ Striking at the defendant over the shoulders of his counsel is impermissible because such attacks only inflame the minds of the jury to the defendant's prejudice. *See Wilson v. State,* 938 S.W.2d 57, 62 (Tex.Crim.App.1996). Reviewing courts are especially disturbed about final arguments that result in uninvited and un-substantiated accusations of improper conduct directed at a defendant's attorney. *See Orona v. State,* 791 S.W.2d 125, 128 (Tex.Crim.App.1990). Arguments making accusations of manufactured evidence are most egregious. *See id.* at 129. Even if the trial court sustains an objection and instructs the jury to disregard the argument, some arguments are so inflammatory that they are incurable by jury instruction. *See Gomez v. State,* 704 S.W.2d 770, 772 (Tex.Crim.App.1985).

In this case, the argument insinuated that Appellant's counsel improperly invented Appellant's defense of traveling and was wholly unnecessary. The State has conceded the remarks were improper. We hold that the prosecutor's comments were impermissible because they were not based on the evidence and constituted an outside the record attack on defense counsel's integrity.

■ Having determined that the prosecutor's comments fall outside the areas of permissible argument, we must determine whether the error warrants reversal. *See Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). Improper comments on defense counsel's honesty do not amount to a constitutional violation. *See id.* Under rule 44.2(b), we are to disregard the error unless it affected Appellant's substantial rights. *See* Tex.R.App. P. 44.2(b). A sub-

stantial right is affected when the error had a substantial injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). We review the record as a whole to determine whether the error had a substantial influence on the verdict. *See Mosley*, 983 S.W.2d at 260.

We find it particularly noteworthy that the jury made a specific inquiry of the trial court during deliberations as to whether the instruction in the court's charge that "[i]t is not a violation of law for a person to carry an illegal knife while he is traveling" is "part of the Texas Penal Code." The jury also asked to "see the entire code on this law." We determine that the error was not cured by the court's instruction and hold that, in the context of the entire case, the prosecutor's argument had a significant and injurious affect on the verdict such that Appellant's substantial rights were affected. We sustain point three.[1]

## IV. CONCLUSION

Having sustained point three, we reverse the judgment of the trial court and remand the cause for a new trial.

---

1. Because of our disposition of point three, it is not necessary to address Appellant's second point, which challenges the trial court's restriction on his final argument.